UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                       CRIMINAL NO. 05-383 (DWF/JSM)

    Plaintiff,

v.                                              REPORT AND RECOMMENDATION

ANTHONY ALAN TAYLOR,

    Defendant.

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came on for hearing before the undersigned upon defendant's Motion to Suppress Evidence of Pre-Trial Identification and In-Court Identification of the Defendant [Docket No. 17], Motion to Suppress Evidence Obtained as a Result of Search and Seizure of Evidence [Docket No. 21], and Motion to Suppress Arrest [Docket No. 22].

Assistant United States Attorney Nate Petterson appeared on behalf of the Government; Rick E. Mattox appeared on behalf of defendant Anthony Alan Taylor who was personally present.

Based upon the pleadings, testimony taken from Officer Kurt Radke, Officer Elizabeth Dea, defendant, Jerome Palmore, and Shalena Bergman, exhibits submitted at the hearing, pre-hearing submissions, and post-hearing submissions, it is recommended that:

1.    Defendant Anthony Alan Taylor's Motion to Suppress Evidence of Pre-Trial Identification and In-Court Identification of the Defendant [Docket No. 17] be **DENIED** as moot pursuant to the representation of defendant's counsel at the hearing;

2.	Defendant Anthony Alan Taylor's Motion to Suppress Evidence Obtained as a Result of Search and Seizure of Evidence [Docket No. 21] be **DENIED**; and

3.	Defendant Anthony Alan Taylor's and Motion to Suppress Arrest [Docket No. 22] be **DENIED**.

I.	**FACTUAL BACKGROUND**

Officer Kurt Radke of the Minneapolis Police Department testified that he received a telephone call from Officer Blaine Lehner, another Minneapolis police officer, on October 19, 2005. Officer Lehner told Officer Radke that an individual, identified as a confidential reliable informant, could arrange for the purchase of crack cocaine from a third party. This person was later identified as Jerome Palmore. In particular, Officer Lehner told Officer Radke that Palmore had been stopped for a traffic violation and was seeking leniency in exchange for cooperating with police. According to Officer Radke, Officer Lehner stated that he had used Palmore on several occasions in the past and that information provided by Palmore had been accurate and reliable. Officer Radke stated that he did not initially consider Palmore to be reliable because he had not worked with Palmore before and because he is always skeptical of potential informants who are attempting to obtain leniency in exchange for cooperation. Officer Radke stated that he accepted Palmore's reliability based on Officer Lehner's experience with him.

On the same day, Officer Radke met with Palmore. Palmore told Officer Radke that he knew a man who went by the name of "T", that he was a member of the Detroit Boys Gang, and that he had purchased crack cocaine from "T" in the past.[1] Palmore

---

[1] Officer Radke testified that he had never heard of "T" prior to October 19, 2005, nor did he know defendant's identify until after his arrest.

gave Officer Radke a physical description of defendant and a description of his blue Buick automobile. Then, in the presence of Officer Radke, Palmore used a cell phone to arrange the purchase of one ounce of crack cocaine from defendant. The transaction was to take place in Minneapolis. However, defendant called Palmore and changed the meeting place to an Arby's on Blake Road in Hopkins because defendant was unable to obtain transportation to Minneapolis. Officer Radke was present during this communication.

After the deal had been arranged between Palmore and defendant, Palmore was placed into the vehicle of Sergeant Elizabeth Dea. Several officers in unmarked automobiles also traveled to the Arby's in Hopkins. Sergeant Dea testified that she and Palmore parked on the north side of the Arby's parking lot, which was closer to Blake Road. All of the officers in the area were in radio contact with each other. Sergeant Dea testified that she was in the presence of Palmore when defendant contacted him via cell phone to change the location of the drug transaction to behind the garages of an apartment complex located across from the Arby's on Blake Road. The police refused to switch locations. Palmore called "T" to tell him that the deal had to take place at the Arby's, and Palmore stated that defendant agreed to meet at the Arby's.[2]

Surveillance officers then observed an individual matching the description of defendant walking from the apartment complex located on Blake Road and Excelsior Boulevard towards the Arby's lot. According to Sergeant Dea, Palmore identified this individual as "T", the defendant in this case. Officers also observed defendant talking

---

[2] Sergeant Dea testified that she was in the presence of Palmore when all of the cell phone calls were placed between him and "T" at the Hopkins Arby's. This information was shared with the other officers.

3

on a cell phone at the same time that Palmore was talking on his cell phone to defendant. The officers watched defendant walk across Blake Road and then enter a convenience store that was near the Arby's. The arrest was made while defendant was inside the convenience store. Defendant was searched incident to arrest. Crack cocaine, a loaded handgun, and a cell phone were discovered on defendant's person.

Palmore also testified at the continuation of the suppression hearing on December 27, 2005.[3] He stated that he had contacted defendant's attorney after defendant had called him from prison. According to Palmore, defendant told him that he knew that Palmore had set him up and that he should call defendant's attorney. Palmore testified that on December 20, 2005, he spoke with defendant's attorney and told him that the police had threatened to plant evidence on him if he did not cooperate with them, and that he had never identified "T" for the police on October 19, 2005. However, at the hearing, Palmore testified that he did set up defendant in exchange for receiving leniency on his arrest. In this regard, Palmore stated that he had been arrested on October 19, 2005, for fleeing from police because he was in violation of the conditions of his house arrest stemming from an earlier conviction. According to Palmore, the police did not ask for information targeting a specific individual, but asked him to provide them with information regarding any drug dealer. Palmore stated that he

---

[3] The initial hearing on defendant's suppression motions took place on December 19, 2005, following the hearing on defendant's discovery motions. One of the discovery motions brought by defendant was a motion to require the Government to make the confidential informant, believed to be Palmore, available for an interview. The Government agreed to make Palmore available for an interview. At the conclusion of the initial suppression hearing, defendant's counsel requested an opportunity to make contact with Palmore and to possibly present him as a witness in support of defendant's suppression motions. Based on this request, the suppression hearing was continued to December 27, 2005, and Palmore was subpoenaed to testify at the hearing.

decided to offer "T" to the police.[4] In addition, Palmore testified that he set up the buy from "T" at the Hopkins Arby's for police, and that he did identify "T" for the police prior to his arrest.

After defendant's arrest, Officer Radke went to obtain a search warrant for the apartment believed to be where defendant lived and for his blue Buick. While a judge approved the search warrant for the blue Buick, it was not approved for the apartment. Since the execution of the search warrant for the car, the search warrant and applications for the apartment and automobile have been lost.[5] The Government represented at the hearing that it would not be offering any evidence seized from the search of the car.

Officer Radke stated that the police froze defendant's apartment while the search warrant was being obtained, but that no search was made of the apartment. However, defendant's girlfriend and the mother of his child, Shelena Bergman, testified at the hearing that police kicked down the door to the apartment, and handcuffed her and her cousin without a warrant. She also testified that the police officers conducted a search of her living room and closets. The police also allegedly asked Bergman if she had any drugs. According to Bergman, the police stayed in her apartment for approximately 2 to 2 1/2 hours and then left. Following this event, Bergman testified that she was served an eviction notice. This notice stated that on October 19, 2005, a search warrant was

---

[4] Palmore stated that he did not know "T's" real name.

[5] Officer Radke stated that despite his many searches, he has been unable to locate the search warrants and supporting applications relating to the blue Buick or defendant's apartment. Officer Radke testified that he typed out the search warrants and their respective applications on the computer at the Hopkins Police Department, but that he did not save his work to the computer. He also testified that he contacted the Hopkins Police Department to obtain copies of the documents, but they were unable to recover them.

executed on her apartment and that drug paraphernalia was found after she showed police a box containing marijuana.  See Defendant's Exhibit No. 3.

## II.    DISCUSSION

### A.    Motion to Suppress Evidence

Defendant argued that the evidence seized from him when he was arrested on October 19, 2005, should be suppressed because the officers did not have probable cause to make the arrest in the first place.  In support of this claim, defendant attacked the credibility of the witnesses who testified at the hearing by arguing that Officer Radke lied when he said that Palmore was detained for a traffic offense, Officer Radke admitted at the hearing that Palmore was not a confidential reliable informant, Palmore lied to defendant's attorney, Officer Radke lied about the search of defendant's apartment, Officer Radke failed to examine defendant's cell phone after he was arrested to confirm if he was the person actually talking to Palmore, and Officer Radke lost the search warrant to the blue Buick and the apartment located at 103 North Bake Road.  See Defendant's Motion Hearing Memorandum ("Def.'s Mem.") at pp. 1-2.  In addition, defendant asserted that the Government hid Palmore's criminal record from defendant, compromised his ability to cross-examine both law enforcement personnel and Palmore as result of the loss of the search warrant and applications for the blue Buick and apartment, and arrested defendant based on information from a tipster that was not sufficiently corroborated.  Id. at pp. 2, 4, 5.  According to defendant, the cumulative effect of these actions on the part of the Government constitutes outrageous conduct and amounts to a violation of due process, which necessitates the suppression of any evidence seized.  Id. at p. 5.

       1.       <u>Probable Cause to Arrest Defendant</u>

This Court finds that police officers had probable cause to arrest and subsequently search defendant based on the totality of the circumstances. "Probable cause to arrest exists if the facts and circumstances known to an officer would warrant a person of reasonable caution in believing that the suspect has, is, or will soon, commit an offense." <u>United States v. McKay</u>, --- F.3d ----, 2005 WL 3370303 at *3 (8th Cir. 2005) (citing <u>United States v. Brown</u>, 49 F.3d 1346, 1349 (8th Cir. 1995)). Such a determination rests on the totality of circumstances rather than on isolated facts. <u>Id.</u>; <u>see</u> <u>also</u> <u>United States v. Archer</u>, 840 F.2d 567, 573 (8th Cir. 1988). "[P]robable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, . . ." <u>United States v. Mendoza</u>, 421 F.3d 663, 667 (8th Cir. 2005) (citing <u>United States v. Payne</u>, 119 F.3d 637, 643 (8th Cir. 1997)).

In this case, the police were dealing with an informant, Palmore, who had a history of providing reliable information to law enforcement. <u>See</u> <u>generally</u>, <u>Doran v. Eckold</u>, 409 F.3d 958, 965 (8th Cir. 2005) ("[L]aw enforcement officers may rely on information provided by others in the law enforcement community, so long as the reliance is reasonable.") (string citation omitted). Further, "[a]n informant's tip sufficiently corroborated by other factors may serve as the basis for probable cause to arrest." <u>United States v. Morgan</u>, 997 F.2d 433, 436 (8th Cir. 1993) (citations omitted). Here, Officer Radke and the other police officers were able to corroborate the information provided by Palmore. Palmore told Officer Radke that defendant had sold drugs to him in the past, described defendant to Officer Radke, and then set up a crack cocaine buy with defendant in the presence of Officer Radke. <u>See</u> <u>United States v. LaMorie</u>, 100 F.3d 547, 553 (8th Cir. 1996) ("[P]ersonal contact with an informant can

7

strengthen an officer's decision to rely on the information provided. . . ."). In addition, the police were in the presence of Palmore when defendant called him to switch the meeting place for the drug buy to an Arby's in Hopkins, and when the defendant attempted to switch the meeting place to a location behind the garages of an apartment complex located across from the Arby's. Officers then observed an individual matching the description that had been given to them by Palmore, walking from the apartment complex near the Arby's towards Blake Road. Both Sergeant Dea and Palmore testified that Palmore identified that individual as "T". Officers also observed "T" talking on a cell phone at the same time that Palmore was talking on his cell phone. Officers never lost sight of "T'" as he walked across Blake Road and into the convenience store near the Arby's, at which time he was arrested.

The fact that Palmore was receiving leniency for the information he provided does not render the information unreliable. See United States v. Carpenter, 422 F.3d 738, 744 (8th Cir. 2005) ("[I]nformants are often motivated 'in the hopes of obtaining leniency with respect to their own situation [but] that does not necessarily mean they are unreliable.") (quoting United States v. Gabrio, 295 F.3d 880, 884 (8th Cir. 2002)). This is especially so in this case where the relying officer met in person with the informant and the information provided by the informant was corroborated by police. Id.

In addition, while it is true that Palmore recanted statements made to defendant's attorney on December 20, 2005, there is also evidence in the record that he may have been pressured by defendant to make such statements to counsel. In particular, Palmore testified that defendant called him from prison, told Palmore that he knew that he had set him up, and told him to call defendant's attorney. When an informant's data is at least partially corroborated, as is the case here, attacks upon credibility and

8

reliability are not crucial to the finding of probable cause. See United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995); United States v. Humphreys, 982 F.2d 254, 259 (8th Cir. 1992).

This Court concludes that the totality of the circumstances – that is, Palmore's information, as corroborated by the police officers' surveillance – provided the police with sufficient probable cause to believe that defendant was in the process of committing an offense involving narcotics, and to arrest defendant based on that belief.[6]

Once under arrest, police officers could perform a pat-down search of defendant and seize any contraband discovered. See United States v. Adams, 346 F.3d 1165, 1170 (8th Cir. 2003) ("Because the officers had sufficient probable cause to arrest Adams without a warrant, it follows that the contraband seized from the pat-down search incident to his arrest is admissible.") (citing United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996)).

For all the reasons stated above, this Court finds that the arrest and search of defendant was supported by probable cause.

### 2. Discovery Violations and Outrageous Conduct

Defendant asserted that the Government "misrepresented initially the informant to the court, has obfuscated the search of defendant's apartment, has hidden the Informant's criminal record and cause for arrest, has searched the apartment without a warrant, has failed to confirm the telephone number and the calls on defendant's cell

---

[6] While defendant claims that police did not bother to check his cell phone after his arrest to see if he actually had called Palmore, the Court notes that defendant did not offer into evidence the Court with his phone records for October 19, 2005, despite the fact that defendant had given this Court his cell phone records for August 30, 2005. More importantly, however, the failure to look at the cell phone does not obviate probable cause based on the totality of circumstances.

phone after he was arrested, and has 'lost' the search warrant." See Def.'s Mem. at p. 4. These actions, according to defendant, constitute outrageous conduct that necessitates the suppression of the evidence seized from defendant on October 19, 2005. Id. at p. 5.

The application of the claim of outrageous government conduct is a question of law that entails consideration of whether the Government's involvement in a crime was so overreaching and outrageous as to bar prosecution as a matter of due process. United States v. Musslyn, 865 F.2d 945, 946-47 (8th Cir. 1989). It is reserved for only the most intolerable government conduct and cannot be based upon conduct that is merely offensive. Id. at 947. "'The level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court.'" United States v. King, 351 F.3d 859, 867 (8th Cir. 2003) (quoting United States v. Pardue, 983 F.2d 843, 847 (8th Cir. 1993)) (citation omitted); United States v. Hunt, 171 F.3d 1192, 1195 (8th Cir. 1999) (same). "This defense is reserved for conduct that falls 'within that narrow band of 'the most intolerable government conduct.'" King, 351 F.3d at 867 (citing Pardue, 983 F.2d at 847, quoting United States v. Musslyn, 865 F.2d 945, 947 (8th Cir. 1989)).

Based on the record before the Court, the Government did not engage in conduct that rises to the level of a due process violation. While the reason for Palmore's detention by police is disputed (traffic violation or fleeing from a violation of house arrest), as is whether the Bergman's apartment was searched or not, even if this Court accepted defendant's version of these events, neither event amounts to the type of conduct which would support the suppression of evidence found on defendant's person following his arrest.

Similarly, the fact that police officers did not check defendant's cell phone following his arrest and before the search to determine if he had actually called Palmore on October 19, 2005, does not evidence outrageous conduct by the Government. Given all of the information that the police possessed before arresting defendant, there is nothing that required them to examine his cell phone before conducting the search of his person.

Finally, defendant's claim that the loss of the search warrants for the blue Buick and the apartment necessitates suppression of evidence seized from him is rejected. "'[T]he failure to preserve . . . 'potentially useful evidence' does not violate due process '*unless a criminal defendant can show bad faith on the part of the police*.'" United States v. Iron Eyes, 367 F.3d 781, 786 (8th Cir. 2004) (emphasis in original) (quoting Illinois v. Fisher, 124 S.Ct. 1200, 1202 (2004), quoting Arizona v. Youngblood, 488 U.S. 51, 58 (1988)). In this case, Officer Radke testified that the search warrants were inadvertently lost. He stated that he typed the search warrants and their respective applications on a computer at the Hopkins Police Department, but that he did not save his work. This is reasonable given that Officer Radke is a Minneapolis police officer and he drafted the warrants at the Hopkins Police Department on the day of defendant's arrest. Officer Radke also stated that despite his many searches, including contacting the Hopkins Police Department, he was unable to locate the search warrants and supporting applications relating to the blue Buick or defendant's apartment. Defendant has not provided this Court with any evidence suggesting that Officer Radke intentionally disposed of the search warrants at issue. As such, this Court finds loss of the search warrants does not constitute a due process violation warranting suppression of evidence.

In sum, this Court does not find any discovery violation or outrageous conduct on behalf of the Government, cumulative or otherwise, that warrants the suppression of evidence obtained from defendant's person on October 19, 2005. As such, this Court recommends that defendant's motion to suppress evidence be denied.

### B.   Suppression of Statements

It is defendant's position that statements given after his arrest should be suppressed because he had been illegally arrested prior to being searched, and consequently, any statements were the fruit of the earlier unlawful arrest. At the hearing, defendant's counsel stated that the suppression of statements was dependant on the success of defendant's motion challenging his arrest and search of his person. As this Court has found that the arrest of defendant and the search were lawful, this Court finds that any statements given by defendant were not illegally obtained. As such, this Court recommends that defendant's request to suppress statements be denied.

### III.   RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.   Defendant Anthony Alan Taylor's Motion to Suppress Evidence of Pre-Trial Identification and In-Court Identification of the Defendant [Docket No. 17] be **DENIED** as moot pursuant to the representation of defendant's counsel at the time of the hearing;

2.   Defendant Anthony Alan Taylor's Motion to Suppress Evidence Obtained as a Result of Search and Seizure of Evidence [Docket No. 21] be **DENIED**; and

3.   Defendant Anthony Alan Taylor's and Motion to Suppress Arrest [Docket No. 22] be **DENIED**.

Dated:       January 13, 2006

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

  Pursuant to Local Rule 72.1(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **January 23, 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

  Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **January 23, 2006**.